FILED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

JAN 2 6 2007

JAMES N. HATTEN, Clerk
By:
    J Reed        Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REDWIN WILCHCOMBE,     :

     Plaintiff,       :

                      CIVIL ACTION NO.

v.                     :

                      1:04-CV-1775-MHS

TEEVEE TOONS, INC. d/b/a     :
TVT RECORDS, et al.,

                    :

     Defendants.

                    :

## **ORDER**

Presently before the Court is defendants' motion for summary judgment. For the reasons set forth below, the Court grants defendants' motion.

Background

Plaintiff Redwin Wilchcombe alleges copyright infringement and false advertising or promotion against defendants TeeVee Toons, Inc., d/b/a TVT Records ("TVT"), BME Recordings, LLC ("BME"), Jonathan Smith, p/k/a Lil Jon ("Lil Jon"), Wendell Neal, p/k/a Lil Bo, and Sammie Norris, p/k/a Big Sam. Plaintiff alleges that defendants unlawfully used the song entitled "Tha Weedman," including its musical composition and sound recording, on defendants' album, "Kings of Crunk."

TVT is recognized as the largest independent record company in the United States. Lil Jon is a well-known and successful music producer and performing artist. Wendell Neal and Sammie Norris are also musical artists who routinely perform with Lil Jon, and together they are known as Lil Jon & the East Side Boyz ("LJESB"). BME is an independent record label co-owned by Lil Jon and others.

In 2001, Lil Jon signed a publishing agreement with TVT, whereby TVT exclusively administers and exploits songs that are authored and co-authored by Lil Jon. Since February 2001, BME has been, and remains, under agreement to TVT to furnish the recording services of LJESB to TVT on an exclusive basis. Under this agreement with BME, TVT owns the copyright in all sound recordings made by LJESB and is an exclusive assignee of the underlying music composition in those recordings.

Plaintiff Wilchcombe is a freelance musician and producer who, at the time of the incidents in this case, was not signed to a recording contract. Plaintiff has a production company known as Street Rock Music, and his experience includes a two-year production agreement with an independent record company.

2

In the fall of 2000, Rick Taylor, the manager of a Miami-based recording studio called Audio Vision Recordings ("Audio Vision"), invited plaintiff to use the studio for free. Taylor and plaintiff reached an agreement whereby plaintiff would continue to work at Audio Vision for free and Taylor would act as a manager and set up work for plaintiff. Under this arrangement, the two were to split the money received for plaintiff's work. In early 2001, Taylor proposed that he and plaintiff create a production company called "Red Teamwerk." Although plaintiff did not sign any written agreement concerning Red Teamwerk, plaintiff has been credited for his producer services under the "Teamwerk" name on at least one other album.

While at Audio Vision, plaintiff worked mostly on his own music but also collaborated with other artists including Kimberly Dennard. Also while at Audio Vision, plaintiff completed a total of three or four music engineering projects, but never signed any agreements with the artists whose music he worked on and never had an understanding that he would be paid for the services he rendered to them.

3

In May of 2002, plaintiff first met LJESB at Audio Vision, where LJESB were working on their album, "Kings of Crunk"[1] (the "Album"). LJESB were working in Studio A while plaintiff worked in an adjacent studio, Studio B. Over the next several weeks, plaintiff bumped into members of LJESB or their studio musicians with increasing frequency and expressed an interest in working with them. However, LJESB did not collaborate with plaintiff.

On one particular day at Audio Vision, plaintiff was in Stuido A with LJESB while LJESB worked on their album. Someone associated with LJESB suggested that they call a supplier of marijuana or "weed." Lil Jon commented that the concept of calling a "weedman" would be a cool idea for a song. Plaintiff and Lil Jon then walked together to the lobby of Audio Vision so that plaintiff could call a weed supplier. Plaintiff began singing a "hook" (chorus and melody) about calling a weedman. Lil Jon commented, "[T]hat's hot. . . . I need that for the

---

[1] "Crunk" generally refers to a specific type of hip hop music based out of Atlanta, Georgia. The term is often used in slang to refer to one who is both crazy and drunk or chronic and drunk (high on marijuana and drunk on alcohol at the same time). See Henry Adaso, Crunk, http://rap.about.com/od/genresstyles/p/Crunk.htm (last visited January 24, 2007). Crunk also refers to an energy drink known as "Crunk Juice." According to the Crunk Juice website, "Letting loose, feeling free, and expressing yourself is crunk." See About Crunk!!!, http://www.crunkenergydrink.com/html2/ (last visited January 24, 2007).

album." Wilchcombe Tr. 80, 81. Plaintiff replied, "[A]re you serious?" Id. at 81.

Lil Jon answered, "[Y]eah, . . . go ahead and make that." Id. at 81-82.

Plaintiff personally confirmed the details of the song with Lil Jon. Plaintiff then left the lobby and went to Studio B. He saved the song he had been working on previously, started a new session for a new song on his equipment, and began working on the song about calling a weedman. Plaintiff fleshed out the chorus he had sung in the lobby and incorporated it as "Chorus one" of the track that ultimately became "The Weedman" (the "Work"). Plaintiff wrote the lyrics for the Work, and he added drums, a bassline, sound effects, and other instruments to accompany "Chorus one" of the track. Plaintiff wrote background vocals that Kimberly Dennard later sang on the Work. Lil Jon stressed to plaintiff that he wanted to use the Work as an interlude, or segue, between two different sides of the album.

Once plaintiff had finished the Work to a certain point, he asked Craig Love, a professional guitarist, to record guitar tracks for the Work. Plaintiff gave Love general direction on what to play, but Love composed and played the various notes and chords making up the guitar elements without any direction from

5

plaintiff.  BME had retained Love to participate in the recording of the Album by LJESB.  Pursuant to agreement Love had with BME, BME owns and controls all of Love's recorded performances for the Album, including all copyright interests in those sound recordings.  Although Love's guitar tracks were included as part of the Work, Love and plaintiff never discussed ownership of the sound recording or the underlying musical composition and they never signed an agreement concerning the Work.

During this time, Lil Jon came in and out of Studio A, telling plaintiff what he thought sounded good, critiquing the Work, and giving plaintiff some ideas on the Work.  After Love and Dennard had completed recording their respective guitar and vocal elements and the song was written, plaintiff went to Studio A to invite Lil Jon to hear the Work and perform it live for him.  Lil Jon along with a few others listened to the Work, and Lil Jon liked it.  After listening to the Work, everyone went back to what they had been doing.

Plaintiff could not finish the Work that evening due to some throat problems, and the Work was not finished by the time LJESB left Miami. Plaintiff put the Work on the back burner until about a week later when Taylor told

6

plaintiff that Lil Jon had called and asked for plaintiff to complete production of the Work so that it could be added to the Album.  Plaintiff returned to Audio Vision and recorded his vocals for the Work.  At this point, plaintiff had arranged and produced the performance on the Work, written all the lyrics, composed all the music, performed all the music except for Love's guitar tracks, and sung all the vocals except for Dennard's background vocals.  The Work was completely finished and recorded except for the final mixing.

Plaintiff then told Taylor that Lil Jon could get the Work whenever he was ready, so that they could mix it and put it on the album.  Plaintiff believed that Taylor would retrieve the recording, which plaintiff had stored digitally on Audio Vision's equipment, and provide a disk of the Work to Lil Jon for mixing and inclusion on the Album.

After receiving the disk from Taylor, LJESB added vocal tracks, namely ad-libs and talking, that they had composed.  LJESB received no direction from plaintiff on their additions, nor did they ever seek plaintiff's approval for their contributions.

7

After LJESB added their vocal tracks, Lil Jon returned to Audio Vision to supervise and participate in the mixing of the Album with mixing engineer Raymond Seay.  Plaintiff was at Audio Vision during the early stages of the mixing of the Work but did not hear the entire Work during that time and did not stay for the entire mixing session.  Plaintiff offered no suggestions or opinions during his brief stay for the mixing, except telling Seay to make the Work sound good.

After work was complete on the Album, it contained twenty-one recordings, including "The Weedman."  Pursuant to its agreement with TVT, BME delivered the Album to TVT for distribution, and it was commercially released on October 29, 2002.  As of January 2005, the Album had sold two million copies and was one of TVT's best albums in 2004.  The Work was never released as a single, has never appeared in a music video, and has never been heard on the radio by any of the parties.  Plaintiff did not hear the materials added by LJESB until he purchased the Album after its release.

Lil Jon testified that there was a reference to "The Weedman" on the back of the CD cover for the Album but that there was no reference to anybody as far

8

as artist or anything. The Album credits are not visible on the outside packaging of the Album, and no image or likeness of plaintiff appears anywhere on the Album packaging. There are no express statements on the Album's outside cover identifying the individual writers or producers of any of the work therein, and it only identifies LJESB, the executive producers, and some of the guest recording artists.

There is a CD insert on the inside of the Album that specifically lists the credits for the tracks on the Album. Under "The Weedman," Lil Jon's and Sammie Norris's names appear in parentheses. Lil Jon explained that to the extent that this designation indicated that they were the writers of the Work, it was inaccurate. Also on the CD insert appears a credit that reads "Produced by Red for Teamwerk," but plaintiff's name does not appear anywhere in the Album. Baker Decl. Ex. U. After TVT did the artwork for the Album, TVT sent the Album to Lil Jon for his review. Lil Jon testified that he informed TVT that the credits on the Album were incorrect because plaintiff was not listed and the engineers were wrong. Lil Jon further testified that to his knowledge, TVT had corrected the problem.

9

Prior to the Album's release, plaintiff never raised the issue of a written contract or payment for his contribution to the Work.  Lil Jon testified that he was relying on people at TVT and BME to get clearance for use of the Work and for a license for it to be on the Album.   However, Lil Jon does not recall ever being told by TVT that they had obtained the legal right through a license or consent to include the Work on the Album.

Lil Jon agreed that although the Album had generated millions of dollars in sales revenue, plaintiff had never been paid anything for the Work.  According to Lil Jon, there was no understanding between him and plaintiff that the Work was a gift, and it was his understanding that plaintiff would be paid.  To date, plaintiff has not received any compensation for the Work.

On May 27, 2004, plaintiff completed and mailed to the U.S. Copyright Office a Form SR copyright registration for "Tha Weedman."[2]   The deposit plaintiff submitted with his Form SR was a CD-R containing the version of the Work that appears on the Album.

---

[2] Plaintiff registered the Work as "Tha Weedman." However, the title of the track on the Album is "The Weedman." The parties do not dispute that the two works are the same despite the slight difference in titles.

AO 72A
(Rev.8/82)

Plaintiff's amended complaint sets forth the claims of copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., and false advertising or promotion pursuant to Section 43(a)(1)(B) of the Lanham Act.[3] Plaintiff avers that he had a copyright in "Tha Weedman" and that defendants did not obtain plaintiff's license, authority, permission, or consent before defendants used "Tha Weedman" on their album. Plaintiff contends further that defendants received millions of dollars in profits by manufacturing, distributing, marketing, advertising, promoting, and selling their album with the song "Tha Weedman" and that plaintiff received no compensation whatsoever. Pursuant to the Lanham Act, plaintiff contends that defendants willfully and falsely advertised or promoted plaintiff's song. Defendants now move for summary judgment on plaintiff's copyright infringement and Lanham Act claims.

Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

---

[3] On June 6, 2006, the Court dismissed plaintiff's state law claim for breach of fiduciary duty.

element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. Celotex, 477 U.S. at 323; Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir. 1990).  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden by merely "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324.  While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

12

that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.,</u>
477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as
an essential element of the non-moving party's case. <u>Anderson,</u> 477 U.S. at 248.
An issue is genuine when the evidence is such that a reasonable jury could return
a verdict for the nonmovant. <u>Id.</u> The nonmovant "must do more than simply show
that there is some metaphysical doubt as to the material facts . . . . Where the
record taken as a whole could not lead a rational trier of fact to find for the non-
moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v.</u>
<u>Zenith Radio Corp.,</u> 475 U.S. 574, 586-87 (1986). An issue is not genuine if it is
unsupported by evidence, or if it is created by evidence that is "merely colorable"
or is "not significantly probative." <u>Anderson,</u> 477 U.S. at 249-50. Thus, to
survive a motion for summary judgment, the non-moving party must come
forward with specific evidence of <u>every</u> element material to that party's case so as
to create a genuine issue for trial.

AO 72A
(Rev.8/82)

Discussion

I.  Copyright Infringement

Plaintiff alleges infringement of the musical composition and sound recording of the Work.  To state a claim for copyright infringement, plaintiff must prove two elements: (1) that he owns a valid copyright in a work; and (2) that defendants copied original elements of that work.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247 (11th Cir. 1999).

Defendants argue that plaintiff is barred from claiming copyright infringement because he granted them an oral or an implied license to use the Work.[4]   In contrast to an exclusive license, which must be in writing, a nonexclusive license to use a copyright may be granted orally or implied from conduct.  Jacob v. Maxwell, 110 F.3d 749, 752 (11th Cir. 1997) (quotations

---

[4] Defendants make two other arguments in support of their motion for summary judgment on plaintiff's copyright infringement claim.  First, defendants argue that plaintiff's copyright infringement claim fails because plaintiff's copyright registration is invalid in that he filed with the Copyright Office a defective deposit, thereby depriving the Court of jurisdiction to consider his claims of infringement.  Second, defendants argue that plaintiff is barred from claiming copyright infringement because they are co-authors of the Work or licensees of co-authors. After a thorough review of the record and viewing the evidence in the light most favorable to plaintiff, the Court finds that there are genuine issues of material fact regarding these two arguments. However, as discussed below, the Court concludes that defendants are still entitled to summary judgment on plaintiff's copyright infringement claim because there was an implied license to use the Work.

omitted).  "In fact, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing."  I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996).  The creator of the Work does not transfer ownership of the copyright to the user, but instead permits the use of a copyrighted work in a particular manner.  Id.  The existence of a license creates an affirmative defense to a claim of copyright infringement. See Jacob, 110 F.3d at 753; I.A.E., Inc., 74 F.3d at 775; Effects Assoc., Inc. v. Cohen, 908 F.2d 555, 59 (9th Cir. 1990).

An implied nonexclusive license may be granted when (1) a person requests the creation of a work (requestor); (2) the creator makes that particular work and delivers it to the requestor; and (3) the creator intends that the requestor copy and distribute the work.  I.A.E., Inc., 74 F.3d at 776; Effects Assoc., Inc., 908 F.2d at 558-59; see Jacob, 110 F.3d at 752.  The Court's focus is not on the subjective intent of the parties, but on an objective inquiry into the facts that manifest intent. See I.A.E., Inc., 74 F.3d at 775; see also Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 42 (1st Cir. 2003).  In assessing the parties' conduct, the Court should focus on deposition testimony as well as the delivery of the copyrighted material without warning that its further use would constitute

15

copyright infringement. <u>I.A.E., Inc.</u>, 74 F.3d at 776; <u>Effects Assoc., Inc.</u>, 908 F.2d at 559 n. 6.

In response to defendants' argument that plaintiff gave them an oral or an implied license, plaintiff relies entirely on his assertion in his affidavit that he did not grant anyone a license to use his Work.  However, the Court's focus is not on plaintiff's (or Lil Jon's) claims of subjective intent, but on objective facts that demonstrate the intent of the parties.

Plaintiff does point out in his statement of additional material facts that Lil Jon testified that he was relying on other people (namely BME & TVT) to get a license to use the Work on the Album and to work everything out.  Lil Jon further testified that he did not recall anyone at TVT telling him that they had obtained a legal right through a license, consent, or any other written permission to use the Work.  Although Lil Jon may have been relying on others to get a license or some other written permission to use the Work, a nonexclusive implied license need not be in writing and can be implied from conduct.

The parties' conduct indicates an implied license. Lil Jon requested the creation of the Work twice: first, by telling plaintiff that he needed a song about a weedman for the Album, and second, by requesting the Work after he had left Audio Vision and plaintiff had put the Work on the back burner. At Lil Jon's request, plaintiff created the Work, and instructed Taylor to send it to Lil Jon. Plaintiff testified that when he finished with the Work, he let Taylor know that he was finished and that Lil Jon "can get it whenever he is ready . . . so they can mix it and put it on the album." Pl. Tr. at 105. Plaintiff further testified that it was his understanding that Taylor was going to give the Work to Lil Jon for completion of the Album and that once Lil Jon had the Work, it was going to end up on the Album. Upon delivering the Work to Lil Jon, plaintiff never discussed with Taylor or any defendant that using the Work would constitute copyright infringement.

After a thorough review of the record and viewing the evidence in the light most favorable to plaintiff, the Court concludes that the undisputed facts establish as a matter of law that plaintiff gave defendants an implied nonexclusive license to use the Work and that no genuine issue as to any material fact exists on this issue. A jury could not reasonably return a verdict for plaintiff. The existence of

17

this license creates an affirmative defense to plaintiff's claim of copyright infringement, and therefore the Court grants defendants' motion for summary judgment on plaintiff's copyright infringement claim.[5]


II. False Advertising or Promotion

Plaintiff brings a claim for false advertising or promotion pursuant to Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Plaintiff alleges in his amended complaint that defendants falsely advertised and promoted plaintiff's song and musical composition, through promotions and advertising about the Album and in the materials distributed with the Album, as a song and musical composition written, composed, and created by Lil Jon and Sammie Norris. Plaintiff also alleges in the amended complaint that defendants falsely

---

[5] Plaintiff contends throughout his response that he always expected to be credited and paid for the Work. Lil Jon further testified that he never expected that plaintiff would not be paid and that the credits for the Work were incorrect because they did not show plaintiff as a writer. These facts indicate that plaintiff's claims may be more appropriately addressed in some other type of action besides copyright infringement. However, because the Court finds that there was an implied license, plaintiff's claim for copyright infringement cannot stand as a matter of law. See Lowe v. Loud Records, No. Civ.A. 01-1797, 2003 WL 22799698 (E.D. P.a. Nov. 20, 2003) (noting that a creator may have a claim for a violation of a license or some other action but no copyright infringement claim where the creator made a beat for a song with the intention and desire that it be incorporated into a musical composition); see also Effects Assoc., Inc., 908 F.2d at 559.

18

advertised and promoted plaintiff's sound recording of the song as a performance

by LJESB.

> Section 43(a) of the Lanham Act provides the following:
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Defendants argue that despite the name plaintiff attaches to his claim, it is

really one for false designation of origin under 43(a)(1)(A) and is barred by the

U.S. Supreme Court's ruling in Dastar Corp. v. Twentieth Century Fox Film

Corp., 539 U.S. 23 (2003). In Dastar Corp., the U.S. Supreme Court held that the

"origin of work" provision of the Lanham Act protected the producer of tangible goods and not the author of an idea or concept because authors were sufficiently protected by copyright laws. 539 U.S. at 37. To the extent that plaintiff's false advertising claim is really one against defendants for passing off his Work as their own and for improper authorship credit, plaintiff's claim is barred. See Radolf v. Univ. of Conn., 364 F. Supp. 2d 204, 222 (D. Conn. 2005) (the plaintiff cannot shoe-horn his claim into a false advertising claim under 43(a)(1)(B) when he really contends that defendants passed off his work as their own).

Plaintiff contends that Dastar Corp. left open the possibility of bringing a claim for false advertising pursuant to 43(a)(1)(B). 539 U.S. at 38. Defendants argue that even if plaintiff's claim is one for false advertising, plaintiff has failed to produce evidence sufficient to establish each element of his false advertising claim. Plaintiff avers that the consuming public was misled and given a false impression about the nature, characteristics, and qualities of the musical composition and sound recording of the Work. Finally, plaintiff argues that the CD inserts included with each Album qualify as commercial advertising or promotion.

The Lanham Act prohibits only those false or misleading statements that occur in the context of "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B); see also Optium Technologies, Inc. v. The Home Depot USA, Inc., No. 1:04 -CV-3260-TWT, 2005 WL 3307508 (N.D. Ga. Dec. 5, 2005). To qualify as commercial advertising or promotion, the communication must be commercial speech by a defendant in commercial competition with plaintiff for the purpose of influencing consumers to purchase the defendant's goods and must be disseminated sufficiently to the relevant purchasing public in such a way as to constitute advertising or promotion. Id. at 5; see also Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996).

First, plaintiff has not produced sufficient evidence that he was a commercial competitor of defendants. See Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir. 1995) (the plaintiff must be a competitor of defendant to have standing to bring a Lanham Act claim). Second, the CD inserts that defendants distributed with the Album do not qualify as commercial advertising or promotion. The public retrieved the CD inserts only after buying the Album, and therefore they could not have had a material effect on purchasing decisions. See Gillette Co. v. Norelco Consumer Prod. Co., 946 F. Supp. 115, 135 (D. Mass.

1996) (statements made inside a product's packaging available to consumers only after they purchased the item, do not affect the choice of purchase and are not commercial advertising within the reach of the Lanham Act).

Plaintiff must establish the following to succeed on a false advertising claim under 43(a)(1)(B) of the Lanham Act: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004); Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002).

Besides making arguments about the CD inserts, plaintiff does not specify which materials defendants distributed with the Album or how defendants falsely advertised the Work in their promotions and advertising for the Album. Instead, plaintiff makes mere allegations that defendants falsely advertised and promoted plaintiff's Work. This is insufficient to defeat defendants' motion for summary

22

judgment. <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1346 (M.D. Fla. 2006) (a plaintiff must support each element of the Lanham Act claim with more than mere allegations). Plaintiff is required to go beyond the pleadings to show that there are genuine issues of material fact for trial.

To the extent that plaintiff is arguing that defendants falsely promoted or advertised the Work through communications on the back of the CD cover of the Album, Lil Jon testified that there was a reference to the Work on the back of the CD cover but there was no reference to anybody as the artist of the Work. At best, this "advertisement" of the Work on the back of the CD cover qualifies as misleading. <u>See</u> <u>Hickson</u>, 357 F.3d at 1261; <u>Border Collie Rescue, Inc.</u>, 418 F. Supp. 2d at 1347 (two types of Lanham Act claims: those based on literally false representations and those based on implicitly false representations; they may be technically true or ambiguous, but implicitly convey a false impression). In order to establish that the back of the CD cover was misleading, the Eleventh Circuit requires that plaintiff present evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence. <u>Hickson</u>, 357 F.3d at 1261. Plaintiff has produced no such evidence of consumer deception.

23

Plaintiff has also produced no evidence that the misleading statement on the back of the CD cover or any other advertisement was material and likely to affect purchasing decisions.  See Border Collie Rescue, Inc., 418 F. Supp. 2d at 1347; Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 365 (M.D. Fla. 1996).

Finally, plaintiff has not produced evidence of injury or explained how he was injured as a result of the false advertising or promotion, and therefore he has not established a casual connection between defendants' actions and any damages suffered.  See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 258 F.3d 578, 581 (7th Cir. 2001).  He has provided no evidence that defendants' false advertising or promotion of the Album has caused or will cause him a loss of sales of his work, and this is unlikely given that there is no evidence plaintiff is in competition with defendants.  See Rotech Healthcare, Inc. v. Chancy, 392 F. Supp. 2d 1372, 1377 (M.D. Ga. 2005).

Therefore, because plaintiff has failed to establish each element of his Lanham Act claim for false advertising or promotion, the Court grants defendant's motion for summary judgment on this issue.

24

Conclusion

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment [#195] and DISMISSES THIS CASE.

IT IS SO ORDERED, this 26th day of January, 2007.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

25